# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:20-CR-00058 (KAD) |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA GILBERT | ) | JULY 28, 2023 |
| | ) | |
| | ) | |

## <u>MEMORANDUM OF DECISION</u>
### RE: MOTION TO SUPPRESS (ECF NO. 469)

Kari A. Dooley, United States District Judge

On December 10, 2019, officers of the Bridgeport Police Department executed two warrants to search the person and residence of Defendant Joshua Gilbert ("Gilbert" or "Defendant"). During the search of Gilbert's residence, officers seized two cell phones pursuant to the warrants, which authorized the seizure of "[c]ell phones and their contents." Officers also seized narcotics, U.S. currency, a gun cleaning kit, and a laser sight for a handgun from the residence pursuant to the plain view exception to the warrant requirement. Gilbert seeks to suppress the fruits of the December 10th search on the grounds that the search warrants did not comport with the requirements of the Fourth Amendment.[1] Specifically, Gilbert argues that the warrants were unsupported by probable cause, insufficiently particularized, and unconstitutionally overbroad. The Government opposes Gilbert's motion to suppress, arguing that the warrants were not constitutionally defective and that, even if they were, the good faith exception to the exclusionary rule precludes suppression. For the reasons that follow, Gilbert's motion to suppress the fruits of the December 10, 2019 search, ECF No. 469, is DENIED.

---

[1] Gilbert also seeks to suppress footage from the Ring surveillance system installed at his residence, which officers obtained pursuant to Gilbert's father's purported consent during the December 10th search. Gilbert alleges that his father's consent was coerced and therefore invalid. The Court will take up the portion of Gilbert's motion relating to the Ring footage in a separate decision.

## FACTUAL BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and recites only those necessary to resolve the pending motion to suppress. The following facts, undisputed for purposes of this motion, are summarized from the parties' memoranda and the warrant application packages at issue here.

### Search Warrant Applications

On December 9, 2019, Sergeant Jason Amato and Officer Matthew Goncalves of the Bridgeport Police Department (the "affiants") applied to the Connecticut Superior Court for two warrants to search Defendant Joshua Gilbert's person and residence located at 190 Norland Avenue in Bridgeport, Connecticut.[2] *See* Gov't Ex. 5 ("Warrant Appls.") at 1, 9, ECF No. 600-5.[3] The warrant applications, including their supporting affidavits, were prepared on the State of Connecticut's standard warrant application Form JD-CR-61. *See id.* The first page of the application for the warrant to search Gilbert's person sought permission to search "Cell phones and their contents, to include video footage and photographs saved on Joshua Gilbert's cell phone(s) pertaining to the below information and criminal activity." *Id.* at 1. The first page of the application for the warrant to search Gilbert's residence likewise sought permission to search "Cell phones and their contents, to include video footage and photographs saved on Joshua Gilbert's cell

---

[2] In their briefing on Gilbert's motion to suppress, both parties detail numerous events that were allegedly the catalyst for the affiants seeking the search warrants at issue here. Gilbert, for example, details the murder of Ty'Quess Moore, alleging that the asserted crime of criminal possession was a "pretext" to search his person and home for evidence of the murder. *See* Def.'s Mem. in Supp. Mot. to Suppress ("Def.'s Mem.") at 3–5, 35, ECF No. 469-1. The Government, although acknowledging that the officers sought the warrants "after a December 8, 2019 shooting at the P.T. Barnum Housing Projects, followed in rapid succession by the murder of Ty'Quess Moore," spends a significant amount of time detailing Gilbert's history of illegal firearm possession leading up to the issuance of the warrants in question. Gov't's Opp'n at 10–12, ECF No. 596. Given that the Court's review of the challenged warrants is limited to the facts contained within the four corners of the warrant application packages, the Court does not detail the facts leading up to the affiants seeking the warrants beyond those delineated in the warrants' supporting affidavits.

[3] The page numbers cited to in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

phone," and additionally sought permission to search "documentation establishing residency for 190 Norland Avenue, Bridgeport, Connecticut." *Id.* at 9. The applications were otherwise identical in all material respects. The affiants affirmed on the first page of both warrant applications that they had probable cause to believe that evidence of the offense of "Criminal Possession of a Firearm[,] Ammunition and Large Capacity Magazine" would be found in the areas to be searched. *Id.* at 1, 9.

Preliminarily, the affidavits briefly summarized the detectives' experience as members of the Bridgeport Police Department and their sources with respect to the information provided in the affidavits. *Id.* at 2, 10. In the following paragraphs, the affiants included the following:

Between November 1 to November 27, 2019, a confidential informant observed Gilbert entering and exiting a residence at 690D Trumbull Avenue in Bridgeport, Connecticut with a black semi-automatic handgun in his possession. *Id.* The informant also "had information" that Gilbert was committing drive-by shootings throughout the City of Bridgeport with other young men from the Trumbull Federal Housing Projects, located in the North End of Bridgeport. *Id.* at 2–3, 10–11. The officers stated that the informant "is a known[,] credible and reliable informant" who had previously "provided information to detectives that ha[d] been corroborated by police investigation and independent surveillance," and whose cooperation with law enforcement had previously led to seizures of firearm(s) and narcotics. *Id.* at 3, 11. From this information, Sergeant Amato "immediately knew" who Gilbert was as he had "had numerous encounters with [Gilbert] and ha[d] personal knowledge that [Gilbert] ha[d] been arrested on two prior occasions with firearms as a Juvenile." *Id.*

The affiants then detailed Gilbert's involvement in a Bridgeport gang and both Gilbert and the gang's use of cell phones and social media, stating:

> Joshua Gilbert is known on the streets as, "Lor Heavy". He is an active gang member that is associated with, "O.N.E." (Only North End). This group controls the Trumbull Federal Housing Projects located in the northend of the city. This Gang/Group is responsible for numerous shootings, assaults and homicides in the city of Bridgeport. They range in age from early teens to their mid-twenties. Gilbert also produces music videos that are on "You Tube". These videos show Gilbert rapping about shootings and other gang related activities along with holding and displaying what appear to be several real firearms including a black Glock semi-auto with extended magazine and light. On October 17th, 2019 at approximately 1443 hours, Eastend Gang/Group members commit a drive-by-shooting while in the northend. One of the males that they shot at is Joshua Gilbert who was recording the incident live on "Facebook" utilizing his personal cell phone. During this incident, Bridgeport PD was advised by a witness that this incident was a shootout between the vehicle and males that were standing in the parking lot. Shell casings were located by Bridgeport PD in two separate locations that confirmed the witness's statement.

*Id.*

Based on the information above, Sergeant Amato checked Gilbert's criminal history and found that he had no adult criminal cases, but that he had pled guilty in two juvenile cases involving firearms and was on Adult Probation for those charges. *Id.* Due to Gilbert's status as a juvenile offender and because he was not yet 21, affiants averred that Gilbert had "no legal right to possess a firearm or ammunition." *Id.* Sergeant Amato and the Bridgeport Police Department Gang Unit therefore obtained and executed a warrant to search the residence at 690D Trumbull Avenue on November 27, 2019. *Id.* The search team located one loaded black 50-round drum and a loaded Glock semi-automatic 40-caliber black firearm with an extended magazine. *Id.* Gilbert was not located within the residence when the search warrant was executed. *Id.*

After summarizing the foregoing facts, the affiants averred that:

> based on training and experience, the affiants know that young Gang members will utilize cell phones, e-mail, text messaging along with the Internet (Social Media) to communicate with other known and active Gang members. They will maintain text, photographs, videos and computerized records that remain on their personal cell phones.

4

> Joshua Gilbert was live streaming on October 17, 2019 at approximately 1443 hours during a shootout between his gang and his rivals from the eastend. Joshua Gilberts personal cell phone recorded part of this incident. Through credible source information it is also believed that photographs pertaining to the seized Glock, extended magazine and 50 round drum are located on Gilbert's personal cell phone showing illegal criminal possession of the above described firearm, magazine and ammunition.

*Id.* at 4, 12. They then attested that:

> the affiants have probable cause to believe that evidence of Criminal Possession of a Firearm, Criminal Possession of Ammunition, and a drive-by shooting incident in the form of a cell phone photographs and videos, plus communicating via voice or text messages, will be located on Joshua Gilbert's personal cell phone(s).

*Id.* They therefore sought warrants to "seize Joshua Gilbert's personal cell phone(s) and extract any and all information pertaining to the above mentioned incidents." *Id.*

On the sixth page of each warrant application package was a signed form entitled "Affidavit Requesting Dispensation With Requirement of Delivery pursuant to § 54-33c, Connecticut General Statutes." *Id.* at 6, 14. On that page, the affiants requested that Conn. Gen. Stat. § 54-33c's requirement that a copy of the warrant application and affidavit in support of the warrant be given to the subject of the warrant at the time of its execution be dispensed with on the grounds that "the personal safety of a confidential informant would be jeopardized by the giving of a copy of the affidavits at such time." *Id.*

On December 9, 2019, a Connecticut Superior Court Judge authorized the search warrants, which appear on the seventh page of each warrant application package. *Id.* at 7, 15. One warrant authorized the search of Gilbert's person for "[c]ell phones and their contents, to include video footage and photographs saved on Joshua Gilbert's cell phone(s) pertaining to the below information and criminal activity," while the other authorized the search of Gilbert's residence at 190 Norland Avenue for "[c]ell phones and their contents, to include video footage and

photographs saved on Joshua Gilbert's cell phone, as well as documentation establishing residency for 190 Norland Avenue, Bridgeport, Connecticut." *Id.* The warrants also granted the request to dispense with Conn. Gen. Stat. § 54-33c's delivery requirements and permitted the nondelivery of the application for a period not to exceed 14 days. *Id.* Significantly, nowhere on the face of the warrants was the crime or crimes for which evidence was being sought identified. *See id.*

**Execution of Search Warrants**

Gilbert alleges that, after receiving the warrants on December 9, 2019, Sergeant Amato prepared for the search and seizure operation by preparing a risk assessment form. Def.'s Mem. at 8. In that form, submitted as Exhibit 7 to Gilbert's Memorandum in Support of the instant motion, Sergeant Amato noted that the "Contraband Targeted" by the search was "cell phones and records related to a shooting" and the crime of Criminal Possession of a Firearm. Def.'s Ex. 7 at 5, ECF No. 470-6. The form also indicated that the search team would be led by Sergeant Amato as "Supervisor," and would also include Officers Goncalves, Simmons, and Hanson, members of the Bridgeport Emergency Services Unit ("ESU"), and "Add. Officers" due to a "CPS Assist." *Id.*

The next day, on December 10, 2019 at approximately 5:30 am, the search team executed the warrants.[4] Def.'s Mem. at 8. At the same time, the Waterbury Police Department executed an arrest warrant for Gilbert arising out of separate firearms charges in Waterbury. *Id.* at 8 n.4; Gov't's Opp'n at 15. During the search, Gilbert alleges that members of the search team advised Gilbert's father, who owned the residence, that they had a warrant to search his home and that "they had authority to take any video or photos that featured Joshua [Gilbert], including cell phones that

---

[4] Gilbert details the manner of the execution of the warrants in his motion to suppress, noting that the search team "broke down" the front and back doors of the residence, entered the property with guns drawn, ordered the occupants of the residence to lay down at gunpoint, and ziptied their hands behind their back. *See* Def.'s Mem. at 8–10. Because Gilbert does not challenge the manner in which the warrants were executed, *see* March 16, 2023 Oral Arg. Tr. at 55:19–56:5, ECF No. 686, the Court does not detail the manner in which the search was conducted here unless it is relevant to the issue of the warrants' validity.

might have such images." Def.'s Mem. at 9. Gilbert's father allegedly asked to see the warrant, but the officers "refused to show a copy of any warrant paperwork until later, after they had conducted the search and arrested and removed Joshua Gilbert." *Id.*

The search team allegedly searched every room of the residence, including the basement, storage rooms, bathrooms, and separate garage, turning over mattresses and emptying out the contents of numerous drawers. *Id.* The officers allegedly "asked repeatedly where they would find guns." *Id.* Members of the search team eventually located Gilbert with his girlfriend in a second-floor bedroom. Gov't's Mem. at 15; Def.'s Ex. 6 at 4, ECF No. 470–5. There, they also found two iPhones, one of which had a screen saver featuring Gilbert and his girlfriend in which Gilbert was holding what appeared to be a black Glock Firearm. Def.'s Ex. 6 at 4. These phones were seized "per the search warrant due to the fact [that] no paperwork could be located showing ownership." *Id.* at 5. In a dresser in the same bedroom, the search team found a Glock cleaning rod, a bottle of gun oil, and an "iPROTEC" flashlight and laser attachment, and in a closet they found two baggies with suspected narcotics and $305 in currency. *Id.* These items were also seized. *Id.* The Government avers that other phones were discovered in other parts of the house, but that they were not seized because they did not appear to be associated with Gilbert. Gov't's Opp'n at 15–16.

To date, the Government represents that the forensic examiner used by the Bridgeport Police Department has been unable to extract data from either of the two cell phones seized from Gilbert's residence. *Id.* at 16. Thus, to date, there has been no data extracted and no evidence obtained from those devices. *Id.*

**STANDARD OF REVIEW**

The Fourth Amendment of the United States Constitution prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by

Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (quoting *Payton v. New York*, 445 U.S. 573, 583 (1980)). "To prevent such general, exploratory rummaging in a person's belongings and the attendant privacy violations, the Fourth Amendment provides that a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Id.* (internal citations and quotations omitted).

**Probable Cause**

"To be lawful under the Constitution, a search warrant must, *inter alia*, set forth evidence establishing probable cause to believe a crime has been committed and that evidence of that crime can be found in what is to be searched." *United States v. Weigand*, 482 F. Supp. 3d 224, 240 (S.D.N.Y. 2020). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Although the probable cause standard "does not demand 'hard certainties' . . . it does require more than a 'hunch.'" *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023) (quoting *Gates*, 462 U.S. at 238, and *Terry v. Ohio*, 392 U.S. 1, 22, 27 (1968)). Therefore, "[i]n determining whether probable cause exists to support the issuance of a warrant, a judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Boles*, 914 F.3d 95, 102 (2d Cir. 2019) (cleaned up). This decision "must be grounded in sufficient facts to establish the

sort of 'fair probability' on which 'reasonable and prudent men, not legal technicians, act.'" *Lauria*, 70 F.4th at 128 (quoting *Gates*, 462 U.S. at 231, 238, 241).

A court reviewing an issuing judge's finding of probable cause "must accord considerable deference to the probable cause determination." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007); *see also Gates*, 462 U.S. at 236 ("[W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotations omitted)). The reviewing court's task "is simply to ensure that the totality of the circumstances afforded the [issuing judge] 'a substantial basis' for making the requisite probable cause determination." *United States v. Thomas*, 788 F.3d 345, 350 (2d Cir. 2015) (quoting *Gates*, 462 U.S. at 238). Additionally, the issuing judge's "finding of probable cause is itself a substantial factor tending to uphold the validity of [a] warrant." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). In the end, any doubts that remain "should be resolved in favor of upholding the warrant." *Id.*

**Particularity & Overbreadth**

The Warrants Clause both "requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "The manifest purpose of this particularity requirement was to prevent general searches." *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). By ensuring that a warrant is sufficiently specific, the particularity requirement ensures that a warrant "does not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'" *United States v. Conley*, 342 F. Supp. 3d 247, 270 (D. Conn. 2018) (quoting *United States v. Wey*, 256 F. Supp. 3d 355, 380 (S.D.N.Y. 2017)).

Thus, "[t]o be sufficiently particular under the Fourth Amendment, a warrant must satisfy three requirements. First, a warrant must identify the specific offense for which the police have established probable cause. Second, a warrant must describe the place to be searched. Finally, the warrant must specify the items to be seized by their relation to designated crimes." *United States v. Ulbricht*, 858 F.3d 71, 99 (2d Cir. 2017) (internal citations and quotations omitted). "A warrant is facially unconstitutional if it fails to comply with any of these requirements." *Purcell*, 967 F.3d at 178. Specificity in a warrant's application or other supporting documents generally cannot cure the constitutional defects of an unparticularized warrant because "[t]he Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* at 179 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557 (2004)). "However, 'a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.'" *In re 650 Fifth Ave. & Related Props.*, 830 F.3d 66, 99–100 (2d Cir. 2016) (quoting *Groh*, 540 U.S. at 557–58).

"[A] search warrant does not necessarily lack particularity simply because it is broad." *Ulbricht*, 858 F.3d at 100. However, a warrant that comports with the Fourth Amendment's particularity requirements may nevertheless be overbroad where the "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446 (quotations omitted). Although frequently conflated, "breadth and particularity are related but distinct concepts," *Ulbricht*, 858 F.3d at 102, and "[t]he doctrine of overbreadth represents . . . an intersection point for probable cause and particularity," *Conley*, 342 F. Supp. 3d at 271 (quoting *Wey*, 256 F. Supp. 3d at 382). Thus, "an unparticularized description of the items subject to search under a warrant may result in the warrant exceeding the scope of established probable cause." *Conley*, 342 F. Supp. 3d at 271. "In other words, a warrant is

overbroad if the description of items to be searched or seized is broader than the limits imposed by the probable cause justifying the warrant." *Id.*

**Good Faith & The Exclusionary Rule**

"The Fourth Amendment 'contains no provision expressly precluding the use of evidence obtained in violations of its commands.'" *Wey*, 256 F. Supp. 3d at 394 (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). The Supreme Court has nevertheless "establish[ed] an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial," in order to "safeguard Fourth Amendment rights generally through its deterrent effect." *Herring v. United States*, 555 U.S. 135, 139–40 (2009). However, "[a] violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule" as "'exclusion has always been [a court's] last resort, not [a] first impulse.'" *United States v. Rosa*, 626 F.3d 56, 64 (2d Cir. 2010) (quoting *Herring*, 555 U.S. at 140).

"Application of the exclusionary rule depends on the efficacy of the rule in deterring Fourth Amendment violations in the future as well as a determination that the benefits of deterrence outweigh the costs." *Id.* at 64 (cleaned up). Moreover, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." *Id.* (quoting *Herring*, 555 U.S. at 143). Thus, the exclusionary rule's deterrence value "justifies its cost when police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v. Raymonda*, 780 F.3d 105, 117–18 (2d Cir. 2015) (quotations omitted). Conversely, "when police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence," exclusion is not warranted because there is "nothing to deter." *Id.* (quotations omitted).

Accordingly, "the good-faith exception to the exclusionary rule applies when an officer 'genuinely believes that he has obtained a valid warrant from a magistrate judge and executes that warrant in good faith,' as long as the officer's reliance on the warrant is 'objectively reasonable.'" *Conley*, 342 F. Supp. 3d at 273 (quoting *Raymonda*, 780 F.3d at 118). "The government bears the burden of 'demonstrat[ing] the objective reasonableness of the officers' good faith reliance' on an invalidated warrant.'" *United States v. Sandalo*, No. 21-708-CR, 2023 WL 3885805, at *2 (2d Cir. June 8, 2023) (summary order) (quoting *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011)). And while an officer's reliance on a warrant is entitled to a "presumption of reasonableness," *id.* (quotation omitted), the Supreme Court has identified four circumstances in which the good-faith exception will not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).

## DISCUSSION

Gilbert seeks to suppress all of the fruits of the December 10, 2019 search of his residence, arguing that the search warrants authorizing the search violated the Fourth Amendment. Def.'s Mem. at 13. Specifically, Gilbert argues that the warrants were unsupported by probable cause, insufficiently particularized, and unconstitutionally overbroad. *Id.* As such, Gilbert argues that the seizure of any cell phones or their contents pursuant to the warrants was constitutionally impermissible, and that the other contraband seized pursuant to the plain view exception to the warrant requirement was the "fruit of the poisonous tree." *Id.* at 30. In response, the Government first notes that it has been unable to extract any data from the seized cell phones, and that therefore

any arguments regarding the suppression of the contents of the phones are not ripe. Gov't's Opp'n at 16. The Government then argues that the warrants nevertheless complied with all of the requirements of the Fourth Amendment, and that, even if they did not, the good faith exception to the exclusionary rule applies and therefore suppression is not warranted. *Id.* at 17, 26. The Court agrees with the Government.

**Probable Cause**

Gilbert first argues that the warrants were constitutionally defective because they failed to establish probable cause to believe that the places to be searched would contain evidence of the offenses alleged. Def.'s Mem. at 13. Gilbert advances two primary arguments as to why the warrants were unsupported by probable cause. First, that none of the facts included in the warrants' supporting affidavits provided the issuing judge with a "substantial basis" to believe that the predicate offense—Criminal Possession of a Firearm and/or Ammunition—was committed by Gilbert or any other person. *See id.* at 13–16. And second, that no facts alleged in the affidavits provided a substantial basis to believe that the places to be searched—namely, cell phones and their contents—would contain evidence of that offense. *See id.*[5]

Gilbert challenges the indicia of probable cause contained in the affidavits on a piecemeal basis, alleging that 1) the information gained from the confidential informant was unreliable because the affidavits failed to provide sufficient indicia of credibility, 2) the "only other criminal

---

[5] Gilbert also argues that the warrant authorizing the search of his residence was unsupported by probable cause to the extent that it sought the search and seizure of documents establishing Gilbert's residency at the premises. Def.'s Mot. at 23–24. Given that Gilbert does not identify any documents that were seized, nor does Gilbert allege that any of the items seized during the December 10, 2019 search were found in locations in which a document, but not a cell phone, could have been located, the Court finds that it need not reach this issue because the portion of the warrant authorizing the search for documents can be severed, in any event. *See Galpin*, 720 F.3d at 448–49 (explaining that a portion of a warrant that is "constitutionally infirm" can be severed from the valid portions of the warrant so that evidence seized under the valid portions can thereby be admitted where the Court is "able to excise from the warrant those clauses that fail the particularity or probable cause requirements in a manner that leaves behind a coherent, constitutionally compliant warrant.").

activity alleged" in the affidavits was insufficient to establish probable cause, and 3) the affiants'

could not rely on their training and experience to "save the warrant." *See id.* However, the Court's

evaluation of an issuing judge's finding of probable cause is not conducted on an item-by-item

basis. Rather, the facts contained in the affidavits must be viewed in their totality to determine

whether they afforded the issuing judge a substantial basis to "make a practical, common-sense

decision whether, given *all the circumstances set forth in the affidavit before him* . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *Boles*, 914

F.3d at 102 (emphasis added) (internal quotation marks omitted).

Here, the affidavits certainly provided such a substantial basis. First, the affidavits included

ample facts to support the issuing judge's finding that Defendant Gilbert committed the offense of

Criminal Possession of a Firearm or Ammunition. The affidavits described how, over a month-

long period, a confidential informant witnessed Gilbert coming and going from a residence while

in the possession of a firearm. Further, the affidavits indicated that the informant provided

information that Gilbert had committed drive-by shootings with other members of the Trumbull

Federal Housing Projects throughout the city of Bridgeport. Contrary to Gilbert's assertion, the

affidavits did not merely label the informant as "credible," but also provided evidence of the

informant's reliability and veracity by explaining that the informant had previously provided

accurate information that had been corroborated by police investigation and led to prior seizures

of firearms and narcotics. *See United States v. Gagnon*, 373 F.3d 230, 235–36 (2d Cir. 2004)

(explaining that, in determining whether a confidential informant's statements may establish

probable cause, a court should consider the "totality of the circumstances," including the

informant's "veracity, reliability and basis of knowledge" (internal quotations omitted)); *United

States v. Wagner*, 989 F.2d 69, 72–73 (2d Cir. 1993) ("Information may be sufficiently reliable to

support a probable cause finding if the person providing the information has a track record of providing reliable information, or if it is corroborated in material respects by independent evidence."). And, the affidavit included that the informant's information relating to Gilbert had been partially corroborated in this instance, as a similar gun to that described by the informant was found during a search of the Trumbull Avenue residence. *See Wagner*, 989 F.2d at 73 ("If a substantial amount of information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that he provides, though uncorroborated, is also reliable.").

The affidavits also indicated that, both through independent investigation and prior interactions with Gilbert, the affiants were aware that Gilbert had committed and was on probation for two prior juvenile firearm offenses. They also indicated that Gilbert was not yet 21. From this, the affiants attested that Gilbert was unable to legally possess a firearm. This supports a reasonable inference that Gilbert unlawfully possessed a firearm.

Further, the affidavits provided that Gilbert is an active gang member associated with O.N.E., a gang that is "responsible for numerous shootings, assaults and homicides in the city of Bridgeport." Warrant Appls. at 3, 11. They also explained that Gilbert produces and posts rap videos online, in which he raps about shootings and other gang-related activities "along with holding and displaying what appear to be several real firearms." *Id.* This evidence, taken together, provided the issuing judge with a very substantial basis to conclude that Gilbert did, in fact, commit the offense of Criminal Possession of a Firearm or Ammunition. *See Lauria*, 70 F.4th at 130 n.14 ("[P]robable cause as to a person's criminal conduct can sometimes inform probable cause to search a place used or frequented by that person or to obtain records for electronic devices linked to that person.").

15

The affidavits also provided a substantial basis to believe that evidence of this offense would be found on Gilbert's cell phone. As factual support, the affidavits averred that credible source information indicated that Gilbert's personal cell phone contained photographs pertaining to the Glock seized from the property at 690D Trumbull Avenue. Further, they indicated that Gilbert had posted videos online showing him with what appeared to be real firearms. Although this does not directly implicate cell phones, an issuing judge is entitled to use common sense in evaluating probable cause, and common sense counsels that videos are often recorded and stored on personal cell phones. *See United States v. Reed*, No. 2:13-CR-29-1, 2013 WL 5503691, at *3 (D. Vt. Oct. 2, 2013) (finding that, although a warrant's supporting affidavit did not specifically mention that the defendant used cell phones, when "[r]ead in a commonsense manner . . . the affidavit supports a finding of probable cause to list cell phones as items to be searched and seized."). Finally, the affidavits provided that Gilbert was shot at during a drive-by shooting, which Gilbert broadcast live on Facebook using his personal cell phone.[6]

Finally, the issuing judge's determination of probable cause is further supported by the affiants' attestations that, based on their training and experience, they know that young gang members like Gilbert will use cell phones, email, text messaging, the Internet, and social media to communicate with other gang members and maintain "text, photographs, videos and computerized records" of their activities. Warrant Appls. at 4, 12. Although, as Gilbert argues, an affiant-officer's expert opinion, standing alone, is generally not "sufficient to establish a link between the item to be searched and the alleged criminal activity," *United States v. Ukhuebor*, No. 20-MJ-1155 (LDH),

---

[6] Gilbert challenges the relevance of the live-streamed shooting to any finding of probable cause, arguing that it neither suggested that Gilbert or any other individual unlawfully possessed a firearm, nor that any evidence of such an offense would be found on Gilbert's phone. Def.'s Mem. at 15–16. This is incorrect. When viewed alongside the other facts set forth in the affidavit, the fact that Gilbert live streamed a violent shooting by a rival gang on social media using his personal cell phone supports a reasonable inference that Gilbert is a member of a gang, that gang members use their personal phones to record and document illegal activities, and that evidence of other criminal activities like illegal possession of a firearm may therefore be contained on Gilbert's personal phone.

2021 WL 1062535, at *3 (E.D.N.Y. Mar. 19, 2021), it "is an important factor to be considered by the judge when making a probable cause determination," *United States v. Benevento*, 836 F.2d 60, 71 (2d Cir. 1987) (internal quotations omitted), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989); *see also United States v. Disla Ramos*, No. 22-CR-431 (LJL), 2022 WL 17830637, at *12 (S.D.N.Y. Dec. 21, 2022) ("[A]n agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application." (quoting *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985), and collecting cases)). Here, Sergeant Amato attested that he had vast knowledge of Bridgeport gangs and served as the Gang Intelligence Sergeant for the City of Bridgeport since 2010. Officer Goncalves likewise attested to his extensive experience with criminal investigations relating to crimes of violence and firearms offenses. Thus, these affiants' extensive knowledge and experience was certainly a relevant factor to be taken into consideration by the issuing judge.

In sum, there was abundant information affording the issuing judge a substantial basis to conclude that evidence of the offense of Criminal Possession of a Firearm or Ammunition would likely be found on Gilbert's phone. The Court therefore affords deference to the issuing judge's determination that there was probable cause to search Gilbert's residence and person for his cell phone.[7]

**Particularity and Overbreadth**

Gilbert next argues that that warrants were both insufficiently particularized and unconstitutionally overbroad. With regard to particularity, Gilbert argues that the warrants failed to identify the specific offense for which the affiants had established probable cause in violation of the first and third prongs of the particularity requirement. *See* Def.'s Mem. at 25–29. Gilbert's

---

[7] This Court sees no basis upon which to reach a different conclusion as to the existence of probable cause in any event.

remaining arguments regarding particularity and overbreadth largely overlap, advancing two primary arguments. First, that the warrants were not sufficiently restricted in scope, *see id.* at 17–19, 23–24, and second, that the warrants failed to set "meaningful parameters" on the information on any phones to be searched, *see id.* at 19–23. The Court addresses each of these arguments in turn.

Gilbert first argues that the search warrants on their face did not identify criminal possession of a firearm as the crime with respect to which evidence was being sought. *See* Def.'s Mem. at 26. He is correct. Indeed, the warrants do not identify any offense at all. *See* Warrant Appls. at 7, 15. The Second Circuit has routinely stated that to be sufficiently particularized, a warrant "must identify the alleged crime for which evidence is sought." *In re 650 Fifth Ave.*, 830 F.3d at 99. Thus, the warrants here run afoul of the first prong of the particularity requirement.

The Government argues that the warrants' facial deficiencies may nevertheless be cured by referring to the information contained in the warrants' supporting applications and affidavits. Gov't's Opp'n at 24–26. However, "the Fourth Amendment 'requires particularity in the warrant, not in the supporting documents.'" *Wey*, 256 F. Supp. 3d at 381 (quoting *Groh*, 540 U.S. at 557). Nevertheless, "a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, *and* if the supporting document accompanies the warrant." *In re 650 Fifth Ave.*, 830 F.3d at 99–100 (emphasis added) (quoting *Groh*, 540 U.S. at 557–58). The Second Circuit has recently decided in a summary order that *both* incorporation and accompaniment are required.[8] *Sandalo*, 2023 WL 3885805, at *2. Examining a

---

[8] Although both the Supreme Court in *Groh* and the Second Circuit in *In re 650 Fifth Avenue* used the conjunctive "and" when stating that a warrant may be construed by reference to its supporting materials "if the warrant uses appropriate words of incorporation, *and* if the supporting document accompanies the warrant," *In re 650 Fifth Ave.*, 830 F.3d at 99–100 (emphasis added) (quoting *Groh*, 540 U.S. at 557–58), neither *Groh* nor *In re 650 Fifth Avenue* explicitly held that *both* incorporation and attachment were required because in both cases the warrants' supporting materials were *neither* incorporated by *nor* attached to the warrants themselves. *See United States v. Cooper*, No. 1:18-CR-00126 EAW, 2019 WL 6167235, at *3 n.2 (W.D.N.Y. Nov. 20, 2019) (assuming, without deciding, that

similar warrant prepared using the same standard State of Connecticut warrant application packet,[9] the court held that the warrant successfully incorporated the supporting application and affidavit, but that "the warrant remain[ed] constitutionally defective" because the "documents were not 'attached' in the legally relevant sense; they were not included with the search warrant when it was presented to [the defendant]." *Id.* at *2–3.

Just as in *Sandalo*, the warrants at issue here successfully incorporated the supporting affidavits and applications,[10] however the documents were not attached to the warrants at the time the warrants were executed. Rather, the documents were withheld for a period of 14 days pursuant to Conn. Gen. Stat. § 54-33c. Accordingly, the Court may not resort to the affidavits or applications to cure this facial defect in the search warrants.

Gilbert next argues that the warrants were insufficiently restricted in scope because they authorized the search of "Cell phones" generally, rather than Gilbert's cell phone, specifically. Gilbert argues that this rendered the warrants overbroad insofar as they allowed for the search of

---

"*Groh* requires that the Fourth Amendment's particularity requirements are only satisfied when the copy of the warrant left at the place of execution included the incorporated affidavit"); *State v. Browne*, 291 Conn. 720, 735 (2009) ("*Groh* is ambiguous, however, on whether the fourth amendment requires an otherwise incorporated warrant application and affidavit to accompany the warrant at the time of execution."). And in *In re 650 Fifth Avenue*, even though the warrant application was concededly not attached to the warrant, the Second Circuit went on to assess whether the application was adequately incorporated by reference, an analysis which would have been unnecessary if both incorporation and attachment are required to meet the particularity requirement. *See* 830 F.3d at 101. Likewise, the Connecticut Supreme Court has determined that under some, albeit limited, circumstances, incorporation alone is sufficient even if the application is not attached. *See Browne*, 291 Conn. at 737. Although not a precedential opinion, the Court accepts *Sandalo* as the Circuit Court's clarified assessment of the issue.

[9] In an accompanying precedential decision released the same day, the Second Circuit included a scanned copy of the search warrant at issue. *See United States v. Sandalo*, 70 F.4th 77, 93–99 (2d Cir. 2023).

[10] To the extent Gilbert attempts to argue that the applications and supporting affidavits were not incorporated by the warrants, *see* Def.'s Mem. at 28–29, this argument is unavailing in light of the Second Circuit's (albeit nonprecedential) holding in *Sandalo*. The Court agrees with the *Sandalo* court that the warrant applications were incorporated by reference here: the warrants routinely referenced their accompanying affidavits and applications—including by using words of incorporation, *see* Warrant Appls. at 7, 15 ("From said affidavit, the undersigned finds that there is probable cause for the undersigned to believe that the property *described in the foregoing affidavit and application* is within or upon the person, if any, named or described in the foregoing affidavit and application, or the place or thing, if any, described in the foregoing affidavit and application under the conditions and circumstances set forth in the foregoing affidavit and application . . . ." (emphasis added))—and the warrants themselves were part of numbered packets that included the warrants' supporting materials, denoting "This is page 7 of a 8 page Affidavit and Application." *Id.*

cell phones that fell outside of the scope of the established probable cause, and that the warrants were therefore insufficiently particularized because they were "not 'carefully tailored to [their] justifications.'" Def.'s Mem. at 17–19, 24–25 (quoting *In re 650 Fifth Ave.*, 830 F.2d at 98). As discussed above, the Court finds that the warrants provided sufficient indicia of probable cause to justify the search of Gilbert's cell phones for certain types of evidence. And although the warrants were for "Cell phones," which could arguably have included a cell phone other than Gilbert's,[11] the Court also notes that the warrants contained additional limiting language. The warrants allowed the search of "Cell phones and their contents, to include, video footage and photographs *saved on Joshua Gilbert's cell phone(s)*." Warrant Appls. at 7, 15. It is thus clear that the warrants contemplated the possibility that Gilbert would have more than one cell phone and that the cell phones sought belonged to Gilbert. It is difficult to imagine how a third party's cell phone would contain photographs "saved on Joshua Gilbert's cell phone(s)." Notwithstanding, even if the language could be construed to implicate cell phones belonging to others, which then might implicate overbreadth, the Court concludes in any event that the good faith exception applies.

Finally, Gilbert argues that the warrants failed to set "meaningful parameters" on the places to be searched insofar as they authorized the search of "[c]ell phones *and their contents*" without restricting the data that may be searched by subject matter or time frame. *See* Def.'s Mem. at 19–23. The Court does not reach this argument because it finds that, regardless of its resolution, the good faith exception will apply. *See infra* pp. 24–25 (discussing how the parameters set in the warrants, even if ultimately determined to be constitutionally deficient, are consistent with similar parameters set by warrants to search electronic devices that have been upheld by other district

---

[11] This concern is not implicated with respect to the warrant for Gilbert's person. It is a reasonable inference that a cell phone seized from Gilbert's person belongs to Gilbert. And as cell phones are not generally labeled as to whom they belong, presence on his person is prima facie evidence of ownership.

courts within this Circuit, thereby evincing the good faith of the affiants in preparing and executing the warrants).

However, it is worth noting that the particularity and overbreadth concerns advanced by Gilbert regarding the warrants' parameters relate to the *contents* of the phones to be searched, arguing that the warrants failed to set meaningful temporal and subject matter restrictions on the data to be searched on any phones that were found. In support of this argument, Gilbert highlights the heightened privacy concerns implicated by searches of electronic devices and particularly cell phones. *See* Def.'s Mem. at 19. The Court recognizes that particularly and overbreadth requirements are very important in the digital realm given the immense amounts of personal data that computers and cell phones are capable of storing. *See, United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (*en banc*) ("The seizure of a computer hard drive, and its subsequent retention by the government, can give the government possession of a vast trove of personal information about the person to whom the drive belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure."); *Galpin*, 720 F.3d at 447 ("The potential for privacy violations occasioned by an unbridled, exploratory search" of electronic storage mediums such as cell phones "is enormous."); *Riley v. California*, 573 U.S. 373, 393 (2014) (noting that "[c]ell phones differ in both a quantitative and a qualitative sense" from other objects that might be found on a person subject to a search because of their immense storage capacity). However, these concerns are not implicated in this case. The Government has been unable to access the contents of the seized phones. Therefore, the issue of the warrants' particularity and overbreadth as it relates to the contents of the phones is not ripe.[12]

---

[12] Should the Government later gain access to the contents of the phones and attempt to introduce evidence obtained from those phones during trial, the Court leaves open the possibility for Gilbert to reassert his arguments related to the contents of the phones.

**Good Faith**

Gilbert argues that, given the constitutional deficiencies of the warrants, the affiants' and search team's actions in preparing and executing the facially defective warrants were, at the very least, grossly negligent, and therefore the exclusionary rule should apply and the evidence obtained during the December 10, 2019 search should be suppressed. Def.'s Mem. at 30–32. The Government argues that, even if the Court finds that the warrants are defective, which the Court has found here, the fruits of the search should not be suppressed because the good faith exception to the exclusionary rule applies. Gov't Opp'n at 26. Again, the Court agrees with the Government.

As discussed above, the Court has found that the warrants were facially defective because they failed to identify the crime for which probable cause was established in violation of the Fourth Amendment's particularity requirement. "Not every facially deficient warrant, however, will be so defective that an officer will lack a reasonable basis for relying upon it." *Rosa*, 626 F.3d at 66. Rather, application of the fourth *Leon* scenario "depend[s] on the circumstances of the particular case." *In re 650 Fifth Ave. & Related Props.*, 934 F.3d 147, 162 (2d Cir. 2019) (quoting *Leon*, 468 U.S. at 923). "The animating concern is whether the 'warrant [is] so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'" *Id.* at 163 (quoting *Leon*, 468 U.S. at 923).

Courts have often found that the good faith exception will save a defective warrant that fails to specify the crime for which probable cause was established where the executing officers nevertheless conducted the search pursuant to the warrant "in accordance with the appropriate limitations set forth in the unincorporated and unattached supporting application or affidavit." *Sandalo*, 2023 WL 3885805, at *1 (citing *Rosa*, 626 F.3d at 64). For example, in *Sandalo*, the

court applied the good faith exception where officers executed a warrant for the search of an apartment that failed to identify the crime on its face and was insufficiently particularized and overbroad because "the officers executing the search warrant were clearly aware of and conducted the search according to the limitations set forth in the application and affidavit." *Id.* at *2–3. Significantly, the affidavit in *Sandalo*, which was incorporated by the warrant but not attached at the time of the warrant's execution, did not contain the same defects as the warrant itself, as it expressly excluded areas of the apartment that were outside of the scope of probable cause and limited the timeframe of the items to be seized to the relevant periods of investigation. *Id.* Further, the warrant application specified the alleged crimes for which probable cause was established, the search team executing the warrant was led by one of the affiants, and the search team seized only items related to the crimes specified in the application and did not search areas falling outside of the scope of the warrant. *Id.*; *see also Rosa*, 626 F.3d at 64–65 (finding that the good faith exception applied to a warrant that did not set forth the nature of the suspected criminal activity where the affiant and officers executing the search were under substantial time pressures, the affiant was personally involved in the execution of the warrant, and the executing officers complied with the limits of the search as set forth in the warrant's supporting application).

Here, like in *Sandalo*, the affidavits and applications supporting the warrants were incorporated but not attached to the warrants, and they remedied the defects of the warrants because they specified the crime for which probable cause was established: "Criminal Possession of a Firearm / Ammunition and Large Capacity Magazine." Warrant Appls. at 1, 9. Similarly, the search team executing the warrants was led and supervised by one of the affiants, Sergeant Amato. The scope of the search as set out in Sergeant Amato's pre-execution risk assessment form was consistent with the scope of the probable cause as established by the warrants' supporting

affidavits, noting that the "Contraband Targeted" was "cell phones and records related to a shooting" and the crime of Criminal Possession of a Firearm. Def.'s Ex. 7 at 5. Gilbert submits no evidence suggesting that the search team went beyond the scope of the search by searching in areas that a cell phone could not have been found. The search team only seized evidence falling directly within the warrants—two cell phones located in the bedroom where Gilbert was located—and contraband that was visible to the search team in plain view in the areas that they were authorized to search.

Even if the warrant for the residence was arguably overbroad because it may have authorized the seizure and search of cell phones other than those belonging to Gilbert, *see supra* pp. 19–21, Gilbert submits no evidence indicating that the search team went beyond the scope of probable cause by actually seizing phones that belonged to anyone other than Gilbert. Indeed, the Government avers that other phones that were found during the search of Gilbert's residence were not seized because they did not appear to relate to or belong to Gilbert. Gov't's Opp'n at 16. Moreover, the Government attested at oral argument that, had a seized phone later been discovered to not belong to Gilbert, such a phone would have been immediately returned to the correct owner.[13] *See* March 16, 2023 Oral Arg. Tr. at 6:1–20.

Gilbert's attempts to cast doubt on the good faith of the affiants and executing officers here on the basis that the warrants were overbroad and insufficiently particularized as they relate to the

---

[13] To the extent that Gilbert argues that the officers acted in bad faith because the search was a "pretext" to search for evidence of the Ty'Quess Moore homicide, *see* Def.'s Mem at 3–5, 35, such an argument is unavailing. As explained above, the search of Gilbert's residence and person for cell phones was supported by probable cause and there is no evidence that the search team went beyond the scope of the probable cause in executing the search. *Cf. Bradway v. Gonzales*, 26 F.3d 313, 319 (2d Cir. 1994) (explaining that if a search incident to arrest pursuant to a pretextual arrest warrant was "properly confined in scope, the ensuing seizure of contraband in plain view did not violate the Fourth Amendment"); *United States v. Nelson*, No. 20CRIM353BMCVMS, 2022 WL 18636591, at *7 (E.D.N.Y. Oct. 24, 2022) ("The Constitution does not permit pretextual use of a search warrant to perform *a broader search than the warrant authorizes*." (emphasis added)), *report and recommendation adopted in part*, No. 20CR353BMCVMS, 2023 WL 358421 (E.D.N.Y. Jan. 23, 2023)).

contents of the cell phones are likewise unavailing. *See* Def.'s Mem. at 30–32. In determining whether evidence should be suppressed, it is necessary to consider the conduct of the executing officers because an important factor is whether they nevertheless acted within the scope of the warrant. *See Rosa*, 626 F.3d at 66 ("[A]pplication of the exclusionary rule requires the additional determination that the officers' conduct was 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'"). Here, as indicated, the officers have not gained access to the contents of the seized phones. Thus, the Court cannot evaluate the officers' conduct in executing the warrants in that respect.

Moreover, although the Court need not decide whether the parameters set in these warrants and their supporting materials were sufficient for the purposes of the Fourth Amendment, the Court observes that the affiants did at least attempt to set parameters on their search in the warrants and supporting documents. The warrants provided an illustrative list of items on the phones that could be seized, providing for the seizure of "[c]ell phones and their contents, *to include video footage and photographs* saved on Joshua Gilbert's phone." Warrant Appls. at 7, 15. Moreover, the warrant to search Gilbert's person provided only for the seizure of evidence "pertaining to the below information and criminal activity." *Id.* at 7. Courts within this Circuit have previously held that similar restrictions are sufficient to satisfy the Fourth Amendment's particularity requirement in the digital context. *See, e.g.*, *United States v. Adams*, No. 1:20-CR-12 LJV (MJR), 2021 WL 10265208, at *11 (W.D.N.Y. Aug. 16, 2021) (finding that a warrant was sufficiently particularized where it sought all records from a phone that were "related to narcotics trafficking" and provided an illustrative list of such records), *report and recommendation adopted*, No. 20-CR-12, 2023 WL 2142148 (W.D.N.Y. Feb. 21, 2023); *United States v. Westley*, No. 3:17-CR-171 (MPS), 2018 WL

3448161, at *13 (D. Conn. July 17, 2018) (finding warrants sufficiently particularized where they "limited the seizures to evidence of violations of the criminal statutes at issue and provided an illustrative list of the items to be seized, a framework courts have held meets the third particularity requirement"); *Ukhuebor*, 2021 WL 1062535, at *4 ("[W]here, like here, items to be seized are defined by reference to particular offenses and the use of an illustrative list, courts in this Circuit have routinely upheld the warrant as sufficiently particularized." (quoting *United States v. Messalas*, No. 17-CR-339, 2020 WL 4003604, at *5 (E.D.N.Y. July 14, 2020))).

Accordingly, absent clear and definitive guidance from the Second Circuit as to what specific parameters are necessary to meet the Fourth Amendment's requirements in the digital realm, the Court cannot hold that the affiants and search team were not acting in good faith in executing the warrants containing the instant parameters. The Court therefore finds that the good faith exception to the exclusionary rule applies, and the evidence obtained during the December 10, 2019 search of Mr. Gilbert's person and residence should not be suppressed.

**CONCLUSION**

For the foregoing reasons, Defendant Gilbert's motion to suppress, ECF No. 469, is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of July 2023.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE