UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 3:20-CR-00058 (KAD) |
| ) | |
| v. ) | |
| ) | |
| LORENZO CARTER, JOSHUA ) | AUGUST 2, 2023 |
| GILBERT, LUIS GARCIA & JAHAZ ) | |
| LANGSTON ) | |

## MEMORANDUM OF DECISION
### RE: MOTIONS TO SEVER (ECF NOS. 565 (Carter), 569 (Gilbert), 573 (Garcia) & 583 (Langston))

Kari A. Dooley, United States District Judge

The Third Superseding Indictment in this prosecution charges Defendants Lorenzo Carter, Joshua Gilbert, Luis Garcia, and Jahaz Langston, as well as others, with a Racketeering Conspiracy and related offenses arising out of their alleged involvement with a street gang known as O.N.E., which allegedly operates within the city of Bridgeport, Connecticut. Pending before the Court are several motions to sever filed by Defendants Carter, Gilbert, Garcia, and Langston. Although not identical, each of these moving Defendants asserts that severance is warranted pursuant to Federal Rule of Criminal Procedure 14 to avoid the prejudicial spillover effect of evidence against the other co-defendants. In addition, Defendant Langston challenges his joinder in the Third Superseding Indictment pursuant to Federal Rule of Criminal Procedure 8(b).[1] The Government opposes any severance, arguing that joinder of these Defendants was proper in light of their alleged

---

[1] Although Defendants Carter, Garcia, and Gilbert cite Rule 8(b), governing joinder, none of these Defendants advance a substantive argument that they were not properly joined.

roles as co-conspirators in the RICO enterprise and that none of these Defendants has met their heavy burden of demonstrating undue prejudice should they be tried together.

For the reasons set forth below, the Motions to Sever are DENIED.

**Rule 8 Joinder**

Rule 8 of the Federal Rules of Criminal Procedure provides that "[t]he indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Accordingly, "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir. 1990) (internal quotation marks omitted). Rule 8(b) generally reflects a policy determination that "public considerations of economy and speed outweigh possible unfairness to the accused." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (internal quotation marks omitted) (discussing Rule 8(a), but noting that Rule 8(b) "reflects a similar policy"). "The established rule is that a non-frivolous conspiracy charge is sufficient to support joinder of defendants under Fed. R. Crim. P. 8(b)." *United States v. Nerlinger*, 862 F.2d 967, 973 (2d Cir. 1988).

Notwithstanding these well-entrenched principles, Defendant Langston argues that joinder was improper because he is not alleged to have been involved in many of the acts and transactions with which his co-defendants are charged. *See* Langston Mot. to Sever at 2–3, ECF No. 583. The Government counters that Langston was properly joined given the nature and scope of the racketeering conspiracy with which he is charged. *See* Gov.'s Opp'n at 110–13, ECF No. 596. The Court agrees with the Government. Langston's argument ignores that the many acts and transactions allegedly committed by others were committed in furtherance of the RICO conspiracy

with which Defendant Langston is charged. The operative indictment alleges a non-frivolous, far-reaching racketeering conspiracy with many members engaged in numerous forms of criminal activity. As an alleged member of the conspiracy who himself allegedly engaged in criminal activity in furtherance of the enterprise, Defendant Langston was properly joined.[2] *See United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) ("The presence of a substantive RICO count under 18 U.S.C. § 1962(c), and of a RICO conspiracy count under 18 U.S.C. § 1962(d), further broadens the government's power to charge multiple defendants together." (quoting *United States v. Castellano*, 610 F. Supp. 1359, 1396 (S.D.N.Y. 1985))); *United States v. Conyers*, No. 15-CR-537 (VEC), 2016 WL 7189850, at *5 (S.D.N.Y. Dec. 9, 2016) (observing the frequency with which courts uphold joinder as proper in RICO and RICO conspiracy cases and observing, "to evaluate a motion to sever under Rule 8(b) in a racketeering conspiracy case, the Court's task is limited simply to determining whether the indictment properly alleged [the defendant's] participation in a RICO conspiracy" (quoting *Friedman*, 854 F.2d at 561)).

**Rule 14 Severance**

Rule 14 of the Federal Rules of Criminal Procedure permits severance of properly joined defendants, at the discretion of the trial court, to avoid prejudice to a defendant or the government. Fed. R. Crim. P. 14(a). Nevertheless, there is a strong and well-settled preference that defendants who are indicted together should be tried together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987) ("Joint trials play a vital role in the criminal justice system . . . ."). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also*

---

[2] The same is true of Defendants Carter, Garcia, and Gilbert.

*United States v. Cardascia*, 951 F.2d 474, 482–83 (2d Cir. 1991). As the Supreme Court has explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. . . . Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

A defendant claiming prejudice by joinder must demonstrate prejudice that is "sufficiently severe [as] to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)). District courts have wide discretion in deciding whether to sever trials, and a defendant seeking review of a denial of severance under Rule 14 bears an "extremely difficult burden." *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989) (internal quotation marks omitted).

On this issue, each of the moving Defendants assert that the evidence of acts of violence, to include potentially multiple murders with which the moving Defendants are not charged, will result in prejudicial spill over.

Specifically, Carter asserts that although he is charged with the murder of Len Smith, he is not charged with the Murder of Ty'Quess Moore, and so his case should be severed. *See* Carter Mot. to Sever at 1–2, ECF No. 565-1. Defendant Garcia, also charged with the murder of Len Smith, advances the same argument. *See* Garcia Mot. to Sever at 3–4, ECF No. 573. Similarly, Joshua Gilbert, who is charged with the murder of Ty'Quess Moore, argues that he should not be tried alongside those alleged to have murdered Len Smith. *See* Gilbert Mot. to Sever at 1–2, ECF

4

No. 569. Each of these Defendants requests the Court to structure a trial that would include "some background information concerning O.N.E." and the specific crimes with which the Defendant is charged, *i.e.*, the murder of Len Smith, the theft of vehicles, narcotics trafficking, or the murder of Ty'Quess Moore. *See* Carter Mot. at 2; Garcia Mot. at 4; Gilbert Mot. at 2. Essentially, each seeks to excise their own alleged criminal activity from the context of the charged RICO conspiracy.[3]

Langston, who is not charged with murder at all, but is charged with being involved in two attempted murders arising out of non-fatal shootings, advances similar arguments. *See* Langston Mot. at 3–4. Unique to Langston, however, is the fact that he was incarcerated at various times for a total of almost two years during the charged RICO conspiracy, and was therefore unavailable, he asserts, to participate in the conspiracy or any of the criminal acts committed during that time. *See id.* at 4–5. He argues that any evidence of crimes committed during this time period cannot be attributed to him at all and the only mechanism by which he can assert his defense in this regard is to tell the jury he was incarcerated. *See id.* at 5 & n.1.

The Government responds that the moving Defendants have not met their heavy burden of demonstrating prejudice or a resulting miscarriage of justice if they are tried with their co-defendants; that the criminal acts perpetrated by others were part and parcel of the conspiracy each of these Defendants joined; that evidence of the criminal acts perpetrated by members of the conspiracy other than these Defendants is admissible against these Defendants, in any event; and that the law strongly favors a joint trial in RICO conspiracy cases. *See* Gov.'s Opp'n at 110–20. The Court agrees with the Government.

---

[3] As discussed, each moving Defendant asks the Court to limit the trial to some "background information" on O.N.E. and evidence of *only* the specific criminal acts allegedly committed by the moving Defendant. The Defendants do not cite, nor is the Court aware of, any authority by which it could unilaterally change the fundamental nature of the charged conduct or the Government's proof thereof even if a severance were to be granted.

Although the risk of "spillover" prejudice between co-defendants can be a basis for severance, "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden," particularly where there is a conspiracy charged. *Friedman*, 854 F.2d at 563. "The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual or separate trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). Once a defendant is charged as a member of a conspiracy, however, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111; *see, e.g.*, *Friedman*, 854 F.2d at 563 (holding that the defendant did not suffer prejudicial spillover because "most of the evidence of which he complains would have been admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy" (internal quotation marks omitted)).

Each moving Defendant is charged with RICO conspiracy. The O.N.E. enterprise is alleged to be an enterprise in fact. Criminal activity undertaken in furtherance of the enterprise is relevant to the existence of the enterprise and the conspiracy, both of which the Government must prove, and admissible against these Defendants whether committed by them or not. *See United States v. Brown*, 627 F. Supp. 3d 206, 234 (E.D.N.Y. 2022). Indeed, "in cases brought under the Racketeer Influenced and Corrupt Organizations Act ('RICO'), 'the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.'" *Id.* (quoting *DiNome*, 954 F.2d at 843). "In such cases the Government must prove an enterprise and a pattern of racketeering activity, which 'may well entail evidence of numerous criminal acts by a variety of persons,' some of whom 'may reasonably claim no direct participation in some of those acts.'" *Id.* (quoting *DiNome*, 954 F.2d at 843). "Nevertheless, evidence of those acts is relevant to the

RICO charges against each defendant." *Id.* (quoting *DiNome*, 954 F.2d at 843 and citing *United States v. James*, 712 F.3d 79, 104 (2d Cir. 2013)).

Accordingly, Defendants Garcia, Gilbert, Carter, and Langston have failed to meet their heavy burden of establishing such prejudice that a miscarriage of justice would ensue if they were tried together and with their other co-defendants.[4]

**Conclusion**

For all of these reasons, the motions to sever, ECF Nos. 565, 569, 573 & 583, are DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August 2023.

    */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[4] Defendants also preserve their right to seek severance should a so-called *Bruton* problem arise. *See Bruton v. United States*, 391 U.S. 123, 136–37 (1968); *Brown*, 627 F. Supp. 3d at 239–40 ("[I]n *Bruton*, the Supreme Court held that where two defendants are tried jointly, the admission into trial evidence of a nontestifying co-defendant's extrajudicial statements, which are incriminating on their face and implicate the defendant, impermissibly violates defendant's constitutional right of confrontation and cross-examination of witnesses under the Confrontation Clause of the Constitution, even if the jury is instructed to consider that statement only against the declarant." (internal quotation marks omitted)). However, to date, the Government has not indicated any intention of using a co-defendant's statement which would implicate the Sixth Amendment concerns animated in *Bruton*.