UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | 3:20-CR-00058 (KAD) |
| ) | |
| v. ) | |
| ) | |
| JOSHUA GILBERT ) | |
| ) | |
| ) | January 15, 2025 |

**MEMORANDUM OF DECISION**
**RE: MOTION FOR JUDGMENT OF ACQUITTAL AND FOR NEW TRIAL**
**(ECF NOS. 1049, 1293)**

Kari A. Dooley, United States District Judge:

Following a jury trial, Defendant Joshua Gilbert was convicted of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), with a special sentencing factor of murder in violation of Conn. Gen. Stat. §§ 53a-54a and 53a-8. Pending before the Court is Gilbert's post-trial motion for judgment of acquittal and/or a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, the motion is DENIED.

**Procedural History**

On July 15, 2021, a federal grand jury returned a Third Superseding Indictment charging Defendants Lorenzo Carter ("Carter") and Joshua Gilbert ("Gilbert"), as well as thirteen others, with a variety of offenses arising out of the defendants' involvement with an alleged street gang and racketeering enterprise known as O.N.E. ECF No. 181. Specifically, Carter and Gilbert were charged with a RICO Conspiracy in violation of 18 U.S.C. § 1962(d). The Indictment included, as special sentencing factors, an allegation that Carter committed the murder (either as principal or aider and abettor), under state law, of Len Smith on August 13, 2018, and that Gilbert committed the murder (either as a principal or aider and abettor), under state law, of Ty'Quess Moore on December 8, 2019. Carter and Gilbert elected to be tried by a jury.

Prior to trial, both Gilbert and Carter filed motions to sever their case from that of the other, ECF Nos. 565, 569, 978, arguing principally that the evidence regarding each murder would present prejudicial spillover as to the defendant not charged in the murder at issue. The Court denied Gilbert's motion to sever and Carter's initial motion to sever by written decision on August 2, 2023. ECF No. 808.

Jury selection was held on October 16 and 17, 2023. The jury heard evidence over the course of 20 days, commencing on October 18, 2023, and on November 21, 2023, they returned a guilty verdict, to include a determination that Carter had committed the murder of Len Smith and that Gilbert had committed the murder of Ty'Quess Moore. After trial, Gilbert requested that new counsel be appointed to represent him. ECF No. 1140. The Court appointed new counsel, which, out of necessity, delayed briefing and consideration of post-trial motions. By motion dated July 1, 2024, and Memorandum dated August 28, 2024, Gilbert seeks a judgment of acquittal or in the alternative, a new trial. ECF No. 1293; Def.'s Mem. in Supp., ECF No. 1365. The Government filed an omnibus opposition to Gilbert's post-trial motions which also addressed Carter's post-trial motions[1] on November 17, 2024. *See* Gov't Opp'n, ECF No. 1384.

**Standard of Review—Motion for Judgment of Acquittal**

"Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. A defendant who challenges the sufficiency of the evidence to support his conviction bears a heavy burden. Not only must the evidence be viewed in the light most favorable to the Government and all permissible inferences drawn in the Government's favor, but the jury verdict must be upheld if *any* rational trier of fact could have

---

[1] Carter's post-trial motions were resolved in a separate decision. Order, ECF No. 1399.

found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003) (cleaned up).

When evaluating the sufficiency of the evidence, courts must "bear in mind that the jury's verdict may rest entirely on circumstantial evidence." *Id*. "When making a case based on circumstantial evidence, the government need not 'exclude every reasonable hypothesis other than that of guilt.'" *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *Holland v. United States*, 348 U.S. 121, 139 (1954)). Moreover, "it is the task of the jury, not the court, to choose among competing inferences." *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). Rule 29 does not provide the trial court with an opportunity to "substitute its own determination of the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984); *accord United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016). Thus, "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Guadagna*, 183 F.3d at 130 (citation and internal quotation marks omitted).

**Standard of Review—Motion for a New Trial**

Rule 33 provides that the district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "In evaluating a Rule 33 motion, the court must 'examine the entire case, take into account all facts and circumstances, and make an objective

3

evaluation,' keeping in mind that the 'ultimate test' for such a motion is 'whether letting a guilty verdict stand would be a manifest injustice.'" *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018) (quoting *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013)). "In other words, there must be a real concern that an innocent person may have been convicted" for the ordering of a new trial to be appropriate. *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006) (cleaned up).

With these legal principles in mind, the Court turns to the merits of Gilbert's motion.

**The Third Superseding Indictment**

Carter and Gilbert were only charged in Count One of the Third Superseding Indictment, which alleged a RICO Conspiracy. The Indictment alleged that O.N.E., or "Original North End" or "Only North End" (hereinafter "ONE"), was a street gang and racketeering enterprise operating principally out of the Trumbull Gardens housing project in the north end of Bridgeport, also called the "Terrace." The Indictment alleged that Carter and Gilbert, along with seven others, conspired to participate in the ONE enterprise; that the conspiracy included an agreement that at least two racketeering acts would be committed by members of the conspiracy; and that the racketeering acts agreed upon included narcotics distribution, arson, the interstate transportation and possession of stolen motor vehicles, Hobbs Act robberies, possession of firearms, and conspiracy to commit murder of rival gang members. As a special sentencing factor, Gilbert was alleged to have committed the murder of Ty'Quess Moore on December 8, 2019, in violation of state law, Conn. Gen. Stat. §§ 53a-54a and 53a-8.

Though not legally required, the Indictment detailed multiple overt acts as having been committed in furtherance of the RICO conspiracy, which will be discussed as needed to explain the Court's decision.

**The Evidence at Trial**

The jury heard testimony from 66 witnesses over 20 days. The witnesses included law enforcement officers; experts from the State of Connecticut Office of the Chief Medical Examiner and the state forensic laboratory; lay witnesses; victims (or victim family members); and several cooperating witnesses who themselves had pled guilty to offenses and were awaiting sentencing. Documentary evidence included hundreds, if not thousands, of social media postings by Carter and Gilbert, other ONE members, as well as rival gang members; group "chats" or texts between co-conspirators; cell phone extractions; cell phone location data; surveillance footage from multiple locations in both Bridgeport and Waterbury; rap videos; numerous crime scene photographs; other photos and videos from various sources, as well as records from internet or telecommunications providers. The physical evidence included multiple firearms; ammunition; shell casings; narcotics; narcotics packaging materials; clothing; multiple cell phones; and DNA samples.

**Discussion**

    **Motion for Judgment of Acquittal**

    **The RICO Enterprise[2]**

The Court first observes that Gilbert does not challenge the sufficiency of the evidence as to the jury's determination of guilt on Count One, the RICO Conspiracy charge. Indeed, he explicitly told the jury that he was not contesting his participation in the alleged RICO conspiracy. Trial Tr. 11/16/2023 A.M., ECF No. 1347, at 80. He invited the jury to find him guilty on Count One. *Id.* at 111. However, at trial and by the instant motion, Gilbert does challenge the sufficiency

---

[2] Although not required to prove the existence of the racketeering enterprise under the conspiracy statute, the Indictment included an allegation that the ONE enterprise, in fact, existed. Further, as the Court charged the jury, "[p]roof of the actual existence of a RICO enterprise—though not necessary—can be highly probative as to the existence of the alleged RICO Conspiracy." Jury Instructions, ECF No. 1080, at 15.

5

of the evidence as to the jury's finding that he murdered, or aided and abetted the murder, of Ty'Quess Moore.[3]  Therefore, the Court summarizes the evidence regarding the RICO conspiracy to provide context for the evidence as it relates to the murder of Ty'Quess Moore.

The jury could have readily determined that ONE was a street gang associated with and operating principally out of the Trumbull Gardens housing project, also known as the "Terrace." Cooperating witnesses Henry Floy and Jaylen Wilson, himself a member of ONE, described in detail the nature of the gang, the criminal activities of the gang, and the history of the gang. Cooperating witnesses Kyran Dangerfield and Charles Bonilla, both rival gang members, corroborated the testimony regarding the existence and nature of ONE. According to this testimony, ONE members included Ta'Ron Pharr; Carter; Gilbert; Zaire Dedrick; Tyiese Warren; Jamar Traylor; Jaylen Wilson; Jahaz Langston; Amire Newsome; Zakwani Owen; Luis Garcia; Jauwan Edwards; Shakale Brantley; and others (some deceased).

ONE had clothing which included a logo of sorts depicting the gang name; ONE had specific hand signs that communicated membership in ONE; ONE had a unique handshake that members used; ONE gang members used social media to taunt and provoke rival gang members; ONE gang members used social media to communicate with each other, largely in furtherance of gang activities, for example planning to travel to steal cars, planning a robbery, or planning to do a drive by shooting. The Court does not identify all of the voluminous evidence introduced as to

---

[3] Although Gilbert does not challenge the jury's guilty verdict in the RICO Conspiracy charge in his Rule 29 motion, his challenge to the jury's finding that he participated in the Ty'Quess Moore homicide is nevertheless properly raised in a Rule 29 motion. A Rule 29 motion can be the mechanism to challenge the evidentiary basis of any jury determination. *See, e.g.*, *United States v. Jackson*, 335 F.3d 170, 180–81 (2d Cir. 2003) (reviewing district court's ruling on Rule 29 motion that didn't challenge underlying conviction, but only challenged jury's factual finding under *Apprendi* of the drug quantity); *United States v. Mack*, No. 18-CR-834, 2020 WL 114509, at *3 (S.D.N.Y. Jan. 10, 2020) ("[Defendant] here does not dispute the sufficiency of the evidence of his guilt on either count on which he was convicted. Instead, challenging the jury's special finding as to drug quantity, he argues that the evidence was insufficient to establish that the narcotics conspiracy of which he was convicted (in Count Six) involved one kilogram and more of mixtures and substances containing a detectable amount of heroin."), *aff'd*, No. 20-788, 2022 WL 4391802 (2d Cir. Sept. 23, 2022) (summary order).

the existence and nature of the RICO conspiracy but concludes easily, and Gilbert does not argue otherwise, that the evidence established that ONE was an "association in fact" as contemplated under the RICO statutes whose activities included a pattern of racketeering activity. *See United States v. White*, 7 F.4th 90, 99–100 (2d Cir. 2021) (finding existence of RICO enterprise where gang members sold drugs together and had shared handshake and greetings); *United States v. Davis*, No. 21-1486, 2023 WL 4582002, at *2 (2d Cir. July 18, 2023) (summary order) (same where gang members planned robberies, sold drugs, and publicized gang affiliation on Facebook); *United States v. Donald*, No. 3:21-CR-8 (VAB), 2024 WL 4719233, at *12 (D. Conn. Nov. 8, 2024) (same where gang members used shared hand signs and phrases, had rivalries with other gangs, and sold drugs together).

Also overwhelming was the evidence that established Gilbert's membership in the RICO conspiracy. Jaylen Wilson identified Gilbert as a member of ONE and someone with whom he had "slid" (an effort to find and shoot rival gang members). Kyran Dangerfield identified Gilbert as a "high value" target for rival gangs given his position within ONE. Gilbert engaged in numerous group chats and social media postings in which he self-branded as a member of ONE. The evidence was replete with videos of Gilbert, photographs of Gilbert (in some wearing ONE branded clothing), and lyrics by Gilbert that detailed the workings and activities of ONE. Gilbert participated in ONE group discussions about gang activities, to include plans to rob people or commit "stains," plans to steal cars, plans to commit acts of violence against rival gang members, and acts of violence committed against ONE. Indeed, the jury saw a video of Gilbert live streaming on October 17, 2019 on Facebook at the precise moment that rival gang members travelled to the Terrace and shot at Gilbert. The audio on the video also makes clear that people in the Terrace returned fire as the car fled the scene. Of note, the jury also saw a different video from the exact

same event, but this video was taken from inside the vehicle used in the drive-by shooting. This shooting will be discussed in greater detail below.

The evidence also established that there were multiple shootings of ONE members, as well as of rival gang members. The jury heard testimony about and saw evidence from multiple crime scenes from the ongoing gang war between ONE and its rivals.

**The Murder of Ty'Quess Moore**

Gilbert challenges the sufficiency of the evidence as to the jury's finding that Gilbert participated in the murder of Ty'Quess Moore on December 8, 2019. He relies primarily on the lack of forensic evidence tying Gilbert to the crime and the lack of eyewitnesses to the crime, and he argues that the jury's verdict in this regard was no more than guilt by association.

The manner by which Moore was murdered is not in dispute. On December 8, 2019, at approximately 6:13 p.m., Moore, whose street name was "Breezo," was standing in an alcove or driveway on Newfield Avenue in the East End of Bridgeport. The murder was captured on surveillance video. The video reveals that an SUV drives past where Moore is standing. It takes a right-hand turn at the next corner which is within yards of where Moore is standing. The SUV appears to brake. Moments later, two individuals are seen walking toward where Moore is standing. They both have firearms. They both come around the front of a van parked in the driveway or alcove, raise their weapons, and shoot Moore at close range. They then run back toward the SUV, which video from the Fusion Center tracks as it speeds away and eventually drives onto Interstate 95. Moore was shot multiple times in the back and elsewhere. He was pronounced dead at 6:55 p.m.

The Government argued that Gilbert, Zaire Dedrick, and Tyiese Warren were in the SUV and participated in the murder. The question of Gilbert's participation required the jury to examine a mosaic of evidence that began well before the murder and continued well after the murder.

The Government marshals the evidence as follows.

First, the social media posts, text messages, and testimony included that Gilbert, Warren, and Dedrick self-branded as the "Say Less Gang" or "SLG," a subset of ONE.

On October 17, 2019, Gilbert taunted Travon Jones, an East End gang member known as "Budda" on Facebook, essentially accusing him of pretending to be a dangerous tough guy and lying about his street creds. Gov't Ex. 608. Within an hour of this taunt, Jones and three East End gang members drove through the Terrace and fired multiple rounds at Gilbert, Warren, and others. At the time, Gilbert was livestreaming on Facebook. The Government also introduced the dash cam video from the shooters' car (which had been stolen). The videos also captured return fire. The police located several shell casings at the scene, one of which was from a .40 caliber firearm.

On October 25, 2019, in a group chat between Gilbert, Warren, and Dedrick, Gilbert suggested the three go in search of rival gang members to shoot. He texted: "We Could PopOut us 3 Tn." He texted "What Ya Wanna Do," and "We Out There Tn?"[4] Dedrick responded, "Definitely." Consistent with this plan, at 12:56 a.m. on October 26, 2019, there was a shooting at 44 Albion Avenue near the P.T. Barnum housing complex.[5] Also consistent with the agreed plan between Gilbert, Warren, and Dedrick, the police recovered shell casings from three different firearms—two .40 caliber firearms and a .45 caliber firearm. Ballistic analysis matched one of the .40 caliber casings to the firearm used to return fire on October 17, 2019. As shown below, the

---

[4] The jury also heard evidence that "Tn" was short for "tonight" and to "PopOut" was to shoot a rival gang member.

[5] The gang from the P.T. Barnum complex was a rival gang to ONE.

9

firearms used on October 26, 2019 resurfaced again and again throughout late 2019, to include, with respect to the .45 caliber firearm, the shooting of Ty'Quess Moore.

On November 9, 2019, there were shots fired near 240 Seaview Avenue on the East End of Bridgeport. Police collected .40 caliber shell casings and the ballistic analysis concluded that it came from one of the .40 caliber weapons used in the October 26, 2019 shooting (which was not the same as the .40 caliber weapon used in the October 17, 2019 shooting).

On November 12, 2019, there were shots fired on Wilmot Ave in the East End. The ballistic analysis of the shell casings recovered concluded that the same three firearms as were used on October 26, 2019 (one .45 caliber and two .40 caliber firearms) were used on November 12, 2019.

On November 24, 2019, there was a shooting in the West End in which Nayshaun Scott was shot in the leg. Ballistic analysis of the shell casing from the scene concluded that the same .45 caliber firearm used to shoot Scott was used on October 26, 2019 and November 12, 2019.

On November 27, 2019, law enforcement executed a search warrant at the Terrace, Apartment 690D on Trumbull Avenue, leased by Gilbert's girlfriend's aunt. The police seized a .40 caliber Glock firearm with an extended magazine and a 50-round drum, both loaded. The aunt sent Gilbert a photo of the search warrant, which he then forwarded to an ONE group text in which he laments that someone is talking to the police. In addition to Gilbert's relationship with the apartment lessee, prior to the search, law enforcement had associated Gilbert with the apartment, having seen him at the apartment, near the apartment, and driving in the vicinity of the apartment. Of significance, the .40 caliber firearm seized was matched to one of the .40 caliber firearms used in the shootings on October 26, November 9, and November 12, 2019.

On December 5, 2019, there were shots fired at the PT Barnum housing complex. The .40 caliber shell casings recovered matched the second .40 caliber firearm used on October 26, 2019 and November 12, 2019, *i.e.*, the .40 caliber firearm used at the same time as the .40 caliber firearm seized from the Trumbull Avenue apartment. Fusion Center surveillance video revealed that the shooter was driving a stolen Lexus RX 350. Zaire Dedrick's Snapchat account contained a video of Dedrick in the vicinity of PT Barnum, armed with a firearm and extended magazine on the inside of what appeared to be the stolen Lexus.[6] From this event, the Government asked the jury to draw the reasonable inference that Dedrick possessed the .40 caliber firearm matched to these various shootings. And if Dedrick possessed this .40 caliber firearm, by reasonable inference, then Warren and Gilbert possessed the remaining two firearms used in the October 26, 2019 shooting incident.

On December 5, 2019, Shelby Johnson, the mother of two East End gang members, "Shoddy" and "Biggie," was shot outside her home. She testified that she saw three shooters running to a dark Ford Edge. Lt. Amato testified that Gilbert had been seen driving a Ford SUV near in time to the November 27, 2019 search, and following the murder of Ty'Quess Moore, the Ford Edge was located near Gilbert's house. The Government argued that the evidence established that Warren, Gilbert, and a Greene Homes gang member known as "Blick," were responsible for this shooting. First, the Government introduced evidence that Gilbert was with Warren on December 6, 2019, including Ring camera footage and text messages. At 6:30 p.m., Gilbert texted Warren, "Comeout/Hurry Up." At 6:41 p.m., Warren texted Dedrick: "We Bouta Go Do What Lor [Gilbert] Was Talkin Yesterday." At 9:11 p.m., Warren texted Dedrick to find out where he was. Dedrick responded that he was at the "trenches," to which Warren indicated, "We Bouta

---

[6] As discussed below, the stolen Lexus was recovered after the murder of Ty'Quess Moore.

Grab Blickkk Rq." Jaylen Wilson identified Blick as a Greene Homes gang member. Ms. Johnson was shot approximately one hour later. Shell casings recovered at the scene reveal that the same .45 caliber gun as was used in the prior shootings was used to shoot at Shelby Johnson. A .40 caliber shell casing found at the scene was matched to a gun later recovered in the Greene Homes housing complex. Finally, a 9 millimeter shell casing was recovered. The Government argued that Gilbert used the 9 mm firearm because the .40 caliber firearm he had been using was seized by law enforcement on November 27, 2019.

Two days later, on the morning of December 8, 2019, Arvan Smith, an ONE member, was shot outside his home. Thereafter, there were two group chats offered into evidence from Tyiese Warren's phone extraction. One group chat involved many ONE members; the second was between Gilbert, Dedrick, and Warren only. In the broader chat, ONE members lament Smith's shooting, discuss who might be responsible, and call for vengeance and retaliation. For example, in part, the chat included:

> Dedrick: "Damm Arv got popped"
>
> Warren: "Bouta Step On N***as Neckss Fr"[7]
>
> Dedrick: "On bro"
>
> Dedrick: "But it might be them E.s. n***as or 150"[8]
>
> Gilbert: "Liked 'Tre'"
>
> Gilbert: "Aye Him and Eon"
>
> Gilbert: "That's My Guess"
>
> Gilbert: "Ion even Knw a Es n***a that's home how we Gon spin that"

---

[7] The jury heard evidence that "fr" means "for real."

[8] "150" was a West Side gang and ONE rival.

>Warren: "Where Ya Tryna Go"
>
>Dedrick: "Every side"
>
>Warren: "I Need My Shit From Blick Crib"
>
>Warren: "Lor [Gilbert] I got 38 For You"
>
>Gilbert: "Igh"

The chat between the SLG members included:

>Warren: "What We On Gang"
>
>Dedrick: "Let's get busy on bro every side of town"
>
>Warren: "SayLess When you Poppin Zi"
>
>Warren: "Lor F*ck You On"
>
>Gilbert: "Cmon Gang"
>
>Warren: "Lor We Gotta Hit Blickkk"
>
>Gilbert: "I did"
>
>Gilbert "Wtw"
>
>Gilbert: "F*ck Y'all On"

And in a text exchange between Gilbert and Warren at 2:51 p.m., Gilbert texts: "Unlock Door."

This last text was sent at 2:51 p.m. on December 8, 2019. The jury could have considered these texts as the SLG members planning retaliation; retrieving firearms (from Blick), which Gilbert indicates he has done; and then getting together ("Unlock Door"). There is no further discussion in the group chat between Warren, Dedrick, and Gilbert for the remainder of December 8, 2019, allowing for the inference that Gilbert, Dedrick, and Warren were, in fact, together during that time.

Consistent with this chat, at 5:53 p.m., there was a report of shots fired in PT Barnum. Location tracking of Dedrick's phone indicates that his phone was at PT Barnum as of 5:45 p.m. Video from the Fusion Center revealed the stolen Lexus RX 350 that was used in the December 5, 2019 shots fired incident, arriving at PT Barnum. The video shows the SUV park, whereupon two people get out of the vehicle and walk into PT on foot. One of the two people is wearing a bright blue shirt with a large center stripe. The shirt was subsequently identified as belonging to Dedrick; it was recovered and introduced into evidence. Shortly after the two individuals walk into PT on foot, shots are fired at 5:53 p.m. The two individuals are then seen running back to the SUV and leaving the scene. Ballistic evidence revealed that the .40 caliber shell casings recovered were fired from the same .40 caliber gun as was used in the October 26, November 12, and December 5, 2019 shots fired incidents. The 9 mm casing was fired from the same gun as was used in the December 6, 2019 shooting of Shelby Johnson.

Within minutes, from 6:05 p.m. to approximately 6:15 p.m., Dedrick's phone was on the East End of Bridgeport near Newfield Avenue. Surveillance video captured the stolen Lexus at that time and in that location. As described above, two individuals appeared to walk down Newfield Avenue from the approximate location of the Lexus, shoot Ty'Quess Moore, and then run back toward the Lexus. Neither shooter is wearing a bright blue shirt with a wide center stripe. Within minutes of the shooting, the Lexus is tracked by the Fusion Center until it enters the on ramp to Interstate 95. Consistent with the footage, Dedrick's phone was on Interstate 95 within minutes of the shooting. Ballistic analysis of the shell casings recovered from the scene of Moore's murder revealed that two guns were used to shoot Moore—the .45 caliber firearm used on October 26, November 12, November 24, and December 6, and the 9 mm firearm that fired shots in PT that same evening and in the December 6, 2019 shooting of Shelby Johnson.

Later that night, Dedrick posted a video of himself, wearing the bright blue shirt, smoking. The jury heard testimony that "smoking on" a rival means that you killed him. It is a means of both bragging about one's accomplishments and taunting one's rivals. Opposition gang member Kyran Dangerfield testified that posting a video of yourself smoking was a recurring practice among gang members after shootings.

The Lexus and the Ford Edge were located quickly in the North End, a short walk from Gilbert's home and also walkable to Warren's home. Ring camera footage from Gilbert's home, though not a complete record from the evening in question, shows Gilbert arriving home around 9 p.m. and leaving again, carrying a bag, at 9:27 p.m. Dedrick's phone was located near Gilbert's home when Gilbert arrived home and when he left approximately 30 minutes later.

On the morning of December 10, 2019, law enforcement executed search warrants at Gilbert's home and Warren's home. No firearms were recovered. However, at Gilbert's home, law enforcement seized a laser sight and gun cleaning supplies. At Warren's home, law enforcement seized a .40 caliber magazine and 9 mm ammunitions, as well as the Lexus key fob.

In addition to the evidence discussed above, the jury received multiple social media posts, photographs, and videos which made clear that Gilbert, Warren, and Dedrick had ready access to firearms. For example, in October 2019, Warren posted a video of himself, Gilbert, and Dedrick, each carrying firearms, while Dedrick repeats the phrase "wop check." The evidence revealed that "wop" is slang for firearm. And on June 1, 2021, a search warrant executed at the home of ONE members Jamar Traylor and Michael Lockhart netted an arsenal of weapons and ammunition, to include a distinctive firearm that was also used by Gilbert in one of his rap videos.

Kyran Dangerfield testified that Breezo (Moore) was part of the PT Barnum gang and that prior to his death, he had been showing disrespect to ONE in his social media posts. Dangerfield

15

also identified a video of Breezo retrieved from Dedrick's phone. Dangerfield testified that Gilbert and Warren took credit for killing Breezo. He testified that he was sitting in his car with a fellow East End gang member Trevon Wright, who was having a FaceTime conversation with Gilbert and Warren. Dangerfield could hear and see the conversation, and he testified that in the back and forth, Gilbert and Warren bragged that they were "smokin on" Breezo and referred to Breezo as "a Pack." Jaylen Wilson and Dangerfield both testified that to turn someone into a pack is to kill them. Dangerfield testified that Warren and Gilbert claimed that Breezo had been talking "shit" about people, including Warren's brother, who had been killed.

On December 14, 2019, Warren sent a portion of a rap lyric to ONE member Michael Lockhart: "And bitch I'm smoking Breezo/We was bending on the Ave, bitch we had about three poles/That nickel hit him through the peep hole." The jury learned that "bending" was doing a drive-by; a "nickel" is a .45 caliber firearm; and that "poles" is slang for firearms.

Gilbert, Warren and Amire Newsome recorded a rap video, again referencing Breezo, with the following Lyrics:

> Gang Gang/Say Less Gang/Like why you playing wit Loose Screw [Warren], like he won't pop out with the nick/***Lor [Gilbert] will pop out on your block, he got a Glock, a 26 [9MM]***/Lor Heavv just popped out with a stick/I told LS to pass the nick/When we slide, talking 'bout bro, we finna hop out take this risk/B*tch SLG they know we step and y'all n***as know it's fact/Can't ask his mans what happened, n***a when them red tips hit his back/Loose Screw turned up for his brother, then he gon' post up in the trap/And if you disrespect my brother, then Loose Screw turn you to a pack/N***as know this ain't no cap, we put a n***a on the map/We put CT on the map, hit a n***a skirt off line/I told my ONE do the dash/I just taught y'all how to bend the Ave/And when it's up then n***as duck, they felt that pressure now they stuck/He thought twice about that diss and when I call, I hit him up/This 4-5 a real grave digga, go grab the shovel, dig 'em up/That Ruger nine, man it change n***as, go ask the Opps what this sh*t done/Y'all n***as took my brother Fetty/***Oops, look at Breezo, his ass stuck***.

Gov't Ex. 993T (emphases added).

In the same vein, Gilbert released a rap video in 2020 in which he rapped, *inter alia*, "we hit shit in P.T. and drops shit on the Ave.," a description that is eerily similar to the shooting in PT followed by the murder of Moore.

The Government argued that the many individual items of evidence—whether from multiple social media posts; ballistic analysis; witness testimony; surveillance footage; cellphone location data; group chats, rap videos and other sources—when put together, creates a mosaic from which the jury should, and apparently did, conclude that Gilbert participated in the murder of Moore.

Gilbert does not rebut, poke holes in, or otherwise attempt to dismantle the Government's theory as to how, in combination, the evidence and the inferences to be drawn therefrom, support the jury's verdict. In conclusory fashion, Gilbert argues only that without forensic evidence or an eyewitness, the Government cannot prove Gilbert's involvement in the murder. He argues that the conviction amounted to no more than guilt by association. The Court agrees that forensic evidence tying Gilbert to the crime, or an eyewitness would make for a stronger case, but such direct evidence is not required. Indeed, a conviction may be premised entirely on circumstantial evidence and the inferences that may reasonably be drawn therefrom. *United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994) ("[T]he jury's verdict may be based entirely on circumstantial evidence."). And here, the jury received a plethora of circumstantial evidence from which Gilbert's involvement in the murder, along with Warren and Dedrick, could reasonably be inferred. That said, such an inference was also supported by direct evidence in the form of Gilbert's and Warren's own words, as testified to by Dangerfield; Warren's rap lyrics sent to Lockhart, and additional rap lyrics by Gilbert, which were seemingly a direct reference to the ONE gang war and the murder of Moore.

Gilbert's motion for judgment of acquittal is therefore DENIED.

**Motion for a New Trial**

In the alternative, Gilbert seeks a new trial. He asserts that the cell phone extraction for cooperating witness Henry Floy, disclosed after the trial, provides material from which Floy could be further impeached, thus requiring a new trial. The Court disagrees.

First, Floy's testimony did not implicate Gilbert in the murder of Moore. Floy offered no testimony regarding ONE following the execution of a search warrant at his home on August 15, 2018, following the murder of Len Smith. And to the extent Floy's testimony supported the allegations that ONE was a RICO enterprise and identified various members in the ONE gang, to include Gilbert, Gilbert did not contest those allegations. In any event, as discussed above, the evidence regarding the existence of, nature of, and membership in ONE was overwhelming. Simply adding to an already lengthy and exhaustive cross-examination of Floy is no reason to order a new trial.

And although lamenting the post-trial disclosure of Floy's cell phone extraction, Gilbert does not identify any aspect of the extraction which would invigorate cross-examination or would impact, let alone alter, the landscape of the original trial.

Gilbert also seeks a new trial based upon the admission of evidence as to many other shootings in Bridgeport, which, he asserts, was of little probative value and was highly prejudicial. He argues that the evidence should have been limited to the shooting of Ty'Quess Moore. He is wrong. The RICO Conspiracy charge included allegations of multiple shootings and other crimes of violence as within the scope of the conspiracy. The evidence was highly probative on these issues. However, concerned about the very prejudice Gilbert now cites, the Court nevertheless charged the jury as follows:

> You have heard evidence regarding the frequency of Shot Spotter activations as well as the frequency of homicides and non-fatal shootings in Bridgeport,

18

> Connecticut, during certain periods of time. This evidence was offered to provide context or background with respect to the experience and conduct of the police officer witnesses who offered this testimony. You may consider this evidence only insofar as you find it probative of the context in which these officers acted during the course of their investigations. These Defendants are not alleged to be personally responsible for all of the Shot Spotter activations or the homicides or non-fatal shootings in Bridgeport during the time periods at issue. You should not draw any inference against these defendants based solely upon these statistics.

Jury Instructions, ECF No. 1080, at 29.

> You have heard evidence regarding multiple shootings involving victims other than Ty'Quess Moore and Len Smith. You are not being asked to determine whether Mr. Gilbert or Mr. Carter played any direct role in those events. The evidence of these other shootings was offered as probative of the existence of the charged RICO Conspiracy, which includes allegations that the conspiracy included an agreement that O.N.E. members would shoot at or kill members of or persons associated with rival gangs. You may consider the evidence regarding these various shootings if you find it probative of the existence and nature of the charged RICO Conspiracy.

*Id.* at 28. Juries are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

Gilbert's motion for a new trial is therefore DENIED.

**Conclusion**

For these reasons, Gilbert's motion for a judgment of acquittal or for a new trial is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of January, 2025.

                                                      */s/ Kari A. Dooley*
                                                      KARI A. DOOLEY
                                                      UNITED STATES DISTRICT JUDGE